## IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## EASTERN DISTRICT OF TENNESSEE

In re

          Case No.  05-36084

SIDNEY DAVID ROGERS

    Debtor

  SIDNEY DAVID ROGERS

    Plaintiff and
    Counter-Defendant

   v.          Adv. Proc. No.  05-3368

  VERA J. ROGERS

    Defendant and
    Counter-Claimant

## M E M O R A N D U M

**APPEARANCES:** F.D. GIBSON, III, ESQ.
      400 Ellis Avenue
      Maryville, Tennessee  37804
      Attorney for Plaintiff/Debtor

      WADE M. BOSWELL, ESQ.
      Post Office Box 221
      Knoxville, Tennessee  37901
      Attorney for Defendant

**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

This adversary proceeding is before the court upon the Complaint to Determine Dischargeability of Certain Debts and Interest in Property (Complaint) filed by the Plaintiff (Debtor) on December 2, 2005. The Defendant (Mrs. Rogers) filed an Answer to Complaint to Determine Dischargeability and Counterclaim (Answer and Counterclaim) on December 30, 2005, and the Debtor filed an Answer to Counterclaim on January 2, 2006.[1] Both the Complaint and the Answer and Counterclaim raise issues involving the automatic stay and the dischargeability of obligations imposed upon the Debtor under a divorce decree.[2]

A preliminary hearing was held on February 9, 2006, and a trial was scheduled. An Agreed Order was entered on March 15, 2006, resolving two issues raised in the Complaint and Answer and Counterclaim. On May 30, 2006, the court entered an Order adjourning the trial indefinitely to allow the parties to proceed with an appeal of their state court divorce action in the Circuit Court for Blount County, Tennessee, styled *Vera J. Rogers v. Sidney David Rogers*, docket no. E-20077 (Divorce Action). Thereafter, the parties filed a Status Report of State Court Litigation on September 20, 2007, advising that on September 12, 2007, the Tennessee Court of Appeals affirmed, with certain modifications, the trial court's judgment entered in the Divorce Action on October 31, 2005. A status conference was held on December 13, 2007.

---

[1] Because the Defendant, Vera Rogers, was the Plaintiff in the state court litigation that is the subject of this adversary proceeding, and the Plaintiff/Debtor, Sidney David Rogers, was the Defendant in that state court litigation, the court, to avoid confusion, will, throughout this Memorandum, refer to the Plaintiff as "Debtor" and the Defendant as "Mrs. Rogers."

[2] Because the Debtor commenced his bankruptcy case prior to the October 17, 2005 effective date of the consumer provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), the provisions of BAPCPA have no application to the issues before the court in this adversary proceeding.

2

On January 3, 2008, a Pretrial Order was entered, defining the remaining issues to be decided in this adversary proceeding and directing, upon agreement of the parties, that they be decided on stipulations, exhibits, and briefs.  Stipulations of undisputed facts and twenty stipulated Exhibits were filed on January 16, 2008.  The Supplemental Brief of Plaintiff was filed by the Debtor on January 27,  2008, and the Replacement Brief of Defendant was filed by Mrs. Rogers on January 29, 2008.

This is a core proceeding.  28 U.S.C.A. § 157(b)(2)(A) and (O) (West 2006).

## I

On April 14, 2004, Mrs. Rogers commenced the Divorce Action seeking to end the parties' thirty-nine year marriage, during the course of which the Debtor had been on active duty in the armed services from March 20, 1962, through December 31, 1982.  A contested hearing was held on March 8, 2005, following which the state court judge took the matter under advisement and requested proposed findings of fact from each party.  The parties entered into an Agreed Order on March 23, 2005, disposing of issues concerning the marital residence.  Ex. 3.  On March 31, 2005, Mrs. Rogers filed her Proposed Findings of Fact and Conclusions of Law, and the Debtor filed his Proposed Findings of Fact on April 11, 2005.  Ex. 1; Ex. 2.  The trial judge issued a letter "Memorandum" to the attorneys for the respective parties on May 27, 2005, stating that he was adopting, with certain exceptions, the Proposed Findings of Fact and Conclusions of Law submitted by Mrs. Rogers and directed that an appropriate order be prepared by Mrs. Rogers' attorney in the

Divorce Action, be forwarded to the Debtor's attorney in the Divorce Action for approval as to form, and be tendered to the court for entry not later than June 16, 2005.  Ex. 4.

The Debtor filed the Voluntary Petition commencing his Chapter 7 bankruptcy case on October 6, 2005.  The next day, October 7, 2005, he filed a Notice of Bankruptcy in the Divorce Action.  Ex. 8.  A Final Decree was entered in the Divorce Action on October 31, 2005, *nunc pro tunc* to March 8, 2005,[3] granting Mrs. Rogers a divorce and ordering the Debtor to make the following payments and/or awards to Mrs. Rogers:  (1)  the sum of $1,183.50 per month as alimony in futuro; (2) one-half of his miliary retirement pension and the survivor benefits from his miliary retirement, both of which the Final Decree labeled as alimony "nondischargeable in bankruptcy"; (3) a lump sum property settlement of $5,000.00 from the sale of a former business; (4) attorneys' fees to Mrs. Rogers' counsel, with no specified amount awarded; (5) court costs; (6) allocation of certain debts and liabilities; and (7) procurement of life insurance in the amount of $60,000.00, with Mrs. Rogers named as beneficiary.  Ex. 5.

On November 10, 2005, the Debtor filed a Notice of Appeal of the Final Decree.  Ex. 12. He also filed a Motion to Alter or Amend Judgment in the Divorce Action on November 17, 2005, arguing that his military pensions were not marital property and that only the portion accrued after June 25, 1981, was divisible between the parties.  Ex. 13.  A Motion for Relief From Judgment was filed by Mrs. Rogers in the Divorce Action on December 7, 2005, asking for the correction of two

---

[3] The Final Decree was actually signed by the trial judge on October 28, 2005, but was not entered on the docket until October 31, 2005.

typographical errors, and an Agreed Order correcting two typographical errors was entered on December 12, 2005.  Ex. 15; Ex. 16.

Thereafter, on December 15, 2005, the Debtor filed a Motion to Set Aside Final Decree in the Divorce Action, arguing that the Final Decree was entered in violation of 11 U.S.C.A. § 362 (West 2004).  Ex. 14.  Mrs. Rogers filed an Answer to Motion to Set Aside Final Decree and an Answer to Motion to Alter or Amend Judgment on January 6, 2006.  Ex. 17; Ex. 18.  On October 16, 2006, an Order was entered in the Divorce Action overruling the Debtor's Motion to Alter or Amend Judgment and incorporating a Memorandum dated September 27, 2006, in which the court held that Mrs. Rogers was entitled to the Debtor's military retirement proceeds not exceeding 50%.  Ex. 19. In an Opinion filed on September 12, 2007 (September 12, 2007 Opinion), the Tennessee Court of Appeals affirmed the Final Decree issued in the Divorce Action, although it reduced the monthly alimony from $1,183.50 to $865.50, and held that while Mrs. Rogers was entitled to one-half of the Debtor's military pension, the designation of the award must be reclassified from alimony to a division of marital property.  Ex. 20.

On December 2, 2005, the Debtor commenced this adversary proceeding, seeking the following relief:  (1) a finding that entry of the Final Decree violated the automatic stay and is unenforceable; (2) a finding that Mrs. Rogers "has no interest in the military pension benefits which accrued prior to June 25, 1981, and that the award of one-half of his military pension be declared void and unenforceable under 10 U.S.C. § 1408 or that such property division is subject to discharge;" (3) a finding that "the miliary pension benefits that accrued after June 25, 1981, are

5

considered as property rights under Tennessee law and subject to discharge" and a "decree that Mrs.

Rogers has no interest in same;" and (4) dischargeability of the property division awards.

In her Answer and Counterclaim, Mrs. Rogers stated that the trial on the parties' divorce was

held on March 8, 2005, and that even though the Final Decree was not entered until October 31,

2005, she did not cause it to be entered post-petition, as both parties had submitted their proposed

findings of facts and conclusions of law in the Divorce Action by mid-April 2005, that the trial judge

issued a Memorandum on May 27, 2005, and her attorney had submitted a final decree, but the

Debtor's attorney refused to sign it, precipitating an in-chambers hearing held on October 18, 2005,

at which the trial judge advised that he knew of the bankruptcy filing but would enter the Final

Decree nevertheless.  Mrs. Rogers also denied that the awards made pursuant to the Final Decree

violate the automatic stay since they were made pursuant to the court's opinion in May 2005, and

she argued that the alimony award is expressly excepted from the stay under § 362(b)(2)(A).  For her

Counterclaim, Mrs. Rogers avers that even if the Final Decree is voidable, the court should find that

it is valid since the Debtor has known of his obligations under the Final Decree since May 27, 2005,

or at the very least, that the stay should be modified to allow for entry of the Final Decree, arguing

that the bankruptcy case was an attempt by the Debtor to re-litigate issues already decided in the

Divorce Action.  In the alternative, Mrs. Rogers urges the court to find that the awards under the

Final Decree are nondischargeable under § 523(a)(5) and/or § 523(a)(15).

Pursuant to the January 3, 2008 Pretrial Order, the following issues remain unresolved:  (1)

whether the Final Decree entered on October 31, 2005, is void except as it pertains to the granting

of the parties' divorce and the award of alimony, or whether the Debtor's conduct, as set forth in

Mrs. Rogers' Counterclaim, constitutes sufficient grounds not to void the Final Decree; (2) if the

Final Decree is not void, whether the Debtor's obligations for attorneys' fees and court costs are

subject to discharge; and (3) if the Final Decree is not void, whether the awarding of a portion of the

Debtor's military retirement to his former spouse is dischargeable as an obligation of his property

settlement division.  On January 29, 2008, an Agreed Order was entered restating the first issue as

whether the Final Decree was void except as it pertains to the granting of the parties' divorce and

alimony or whether the Debtor's conduct, as "raised in defendant's Countercomplaint and

subsequent thereto, [is] grounds for annulling the automatic stay."

## II

The first issue before the court is whether the entry of the Final Decree in the Divorce Action

renders the Final Decree void since it occurred post-petition.  The commencement of the Debtor's

bankruptcy case on October 6, 2005, triggered the protections of the automatic stay as follows:

> (a)  Except as provided in subsection (b) of this section, a petition filed under section 301 . . . operates as a stay, applicable to all entities, of—
>
> > (1)  the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; [and]
> >
> > . . . .
> >
> > (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]

11 U.S.C.A. § 362(a).

7

"The protections of the stay are automatic and mandatory with the filing of the bankruptcy petition." *Enron Corp. v. Calif. ex rel. Lockyer (In re Enron Corp.)*, 314 B.R. 524, 533 (Bankr. S.D.N.Y. 2004). "The scope of the automatic stay is broad and is a fundamental debtor protection that not only protects debtors but protects creditors as well[,]" *Enron Corp.*, 314 B.R. at 533 (internal citations omitted), and remains in effect throughout the pendency of the bankruptcy case. *In re Printup*, 264 B.R. 169, 173 (Bankr. E.D. Tenn. 2001). It applies to all debts, even those "that will ultimately be excepted from discharge, since one of the fundamental purposes of the automatic stay is to give the debtor 'a breathing spell from his creditors' and 'to be relieved of the financial pressures that drove him into bankruptcy.'" *In re Haas*, 2004 Bankr. LEXIS 2216, at *6 (Bankr. E.D. Va. Dec. 22, 2004) (quoting H.R. REP. NO. 95-595 at 340 (1977)). In the Sixth Circuit, however, actions taken in violation of the automatic stay are "invalid and voidable and shall be voided absent limited equitable circumstances." *Easley v. Pettibone Mich. Corp.*, 990 F.2d 905, 911 (6th Cir. 1993).

Notwithstanding the strict provisions of § 362(a), the Bankruptcy Code excludes limited actions from operation of the automatic stay as follows:

(b) The filing of a petition under section 301 . . . of this title . . . does not operate as a stay—

. . . .

(2) under subsection (a) of this section—

(A) of the commencement or continuation of an action or proceeding for—

. . . .

8

(ii) the establishment or modification of an order for alimony, maintenance, or support; or

(B) of the collection of alimony, maintenance, or support from property that is not property of the estate[.]

11 U.S.C.A. § 362(b).  In other words, "[t]he foregoing provision does not permit the commencement or continuation of an action to enforce an obligation but it does permit a non-debtor spouse to seek modification of a divorce decree and, as material to the issue here, it permits a non-debtor spouse to commence or continue an action for alimony and the collection of alimony from property that is not property of the estate." *Vargason v. Porter (In re Vargason)*, 260 B.R. 488, 492 (Bankr. D.N.D. 2001); *see also Hutchison v. Birmingham (In re Hutchison)*, 270 B.R. 429, 433-34 (Bankr. E.D. Mich. 2001); *Lori v. Lori (In re Lori)*, 241 B.R. 353, 355 (Bankr. M.D. Pa. 1999).

It is undisputed that the state court was aware of the Debtor's bankruptcy case when it unilaterally entered the Final Decree post-petition on October 31, 2005.  Nevertheless, although the automatic stay was in effect once the Debtor filed his bankruptcy petition on October 6, 2005, § 362(b)(2)(A)(ii) clearly authorized the entry of the Final Decree with respect to the granting of the divorce and the awarding of alimony, maintenance, or support.  As such, the court finds that the entry of the Final Decree by the state court did not violate the automatic stay as to all issues pertaining to the granting of the parties' divorce and the award of alimony, and the Final Decree is not voidable, nor are any of the subsequent orders derived therefrom entered by the Blount County Circuit Court and the Tennessee Court of Appeals with respect to those issues, since none of these orders sought to enforce or collect from the Debtor, but instead, only clarified the initial determinations made under the Final Decree concerning the determination and resolution of alimony and support issues.

With respect to any other issues addressed, including property distribution, as provided by *Easley*, the Final Decree would be voidable but not void if limited equitable circumstances exist to prevent the court from voiding it, such as "where the debtor unreasonably withholds notice of the stay and the creditor would be prejudiced if the debtor is able to raise the stay as a defense, or where the debtor is attempting to use the stay unfairly as a shield to avoid an unfavorable result[.]" *Easley*, 990 F.2d at 911.[4]

Under these circumstances, the court may retroactively annul the automatic stay "for cause" by virtue of 11 U.S.C.A. § 362(d)(1). However, "[t]he stay may be annulled only in the presence of extraordinary circumstances, which include the debtor's bad faith filing of the bankruptcy case, a creditor's lack of 'knowledge of the applicability of the automatic stay,' and unfair prejudice to the creditor." *In re Burrell*, 186 B.R. 230, 235 (Bankr. E.D. Tenn. 1995) (quoting *In re Lipuma*, 167 B.R. 522, 526 (Bankr. N.D. Ill. 1994)). The equitable exceptions justifying annulment of the stay "must be applied sparingly." *In re Printup*, 264 B.R. at 176; *see also In re Washtenaw/Huron Inv. Corp. No. 8*, 160 B.R. 74, 79-80 (E.D. Mich. 1993) (bankruptcy court did not abuse its discretion in annulling the automatic stay after finding that the bankruptcy was filed in bad faith); *In re Hurst*, 212 B.R. 890, 893 (Bankr. W.D. Tenn. 1997) (annulment was justified when debtor violated consent order prohibiting re-filing prior to foreclosure).

---

[4] Other portions of the Final Decree concerning the parties' residence have long since been settled, and the sole questionable portions, it appears, are those concerning attorneys' fees, court costs, and the Debtor's military retirement.

10

In her Answer and Counterclaim, Mrs. Rogers avers that the Debtor knew from May 27, 2005, the date of the trial judge's Memorandum, what his obligations to her would be and that he filed his case knowing that the Final Decree would be entered imminently, and in an attempt to re-litigate the issues previously determined by the state court in the Divorce Action. Although Mrs. Rogers' averments with respect to the Debtor's timing of his filing are speculative and not supported by the record before the court, the same cannot be said with respect to the Debtor's attempts to re-litigate issues previously decided by the state court.

It is evident from the record that other than Mrs. Rogers' Motion for Relief From Judgment filed on December 7, 2005, seeking to correct typographical errors in the Final Decree, it was the Debtor who, though his bankruptcy case was pending, filed the Motion to Alter or Amend Judgment and Notice of Appeal in the Divorce Action and who otherwise pursued appellate review. To this end, the Debtor agreed to the entry of an Agreed Order Vacating Stay (Agreed Order) in his case file on May 30, 2006, to allow for "the State of Tennessee appellate process to reach a final non-appealable order" in the Divorce Action. As a result of this Agreed Order, the stay was modified, thus allowing the parties to engage in the appellate process leading to the Tennessee Court of Appeals' September 12, 2007 Opinion. Voiding the Final Decree with respect to the remaining property distribution aspects would also render the September 12, 2007 Opinion moot, and after the prolonged litigation, which was commenced and pursued by the Debtor, would produce an entirely unfair result. The court finds that this is a situation where the Debtor, by not receiving a ruling to his liking on the appeal he initiated, is now attempting to unfairly use the automatic stay as a shield, to the detriment of Mrs. Rogers. Such actions fall within the scope of limited equitable

circumstances, and the court, therefore, finds that cause exists to annul the stay retroactively to

October 6, 2005, the date upon which the Debtor filed his petition.  Accordingly, the entry of the

Final Decree on October 31, 2005, did not violate the automatic stay with respect to the remaining

issues before the court, including the distribution of property.

## III

Having found that the Final Decree is not voidable, the next issue is whether the obligations

of attorneys' fees and court costs assessed against the Debtor are subject to discharge.   The

dischargeability of this debt is governed by 11 U.S.C.A. § 523 (West 2004), which provides, in

material part:

> (a) A discharge under section 727[5] . . . of this title does not discharge an individual
> debtor from any debt—
>
> . . . .
>
>> (5) to a spouse, former spouse, or child of the debtor, for alimony to,
>> maintenance for, or support of such spouse or child, in connection with a
>> separation agreement, divorce decree or other order of a court of record,
>> determination made in accordance with State or territorial law by a
>> governmental unit, or property settlement agreement, but not to the extent
>> that—
>>
>>> (A) such debt is assigned to another entity, voluntarily, by operation
>>> of law, or otherwise . . .; or
>>>
>>> (B) such debt includes a liability designated as alimony, maintenance,
>>> or support, unless such liability is actually in the nature of alimony,
>>> maintenance, or support; [or]

---

[5]  Chapter 7 debtors receive a discharge of pre-petition debts, "[e]xcept as provided in section 523 of this
title[.]" 11 U.S.C.A. § 727(b) (West 2004).  This accomplishes the goals of Chapter 7 to relieve "honest but unfortunate"
debtors of their debts and allow them a "fresh start" through this discharge.  *Buckeye Retirement, LLC v. Heil (In re
Heil),* 289 B.R. 897, 901 (Bankr. E.D. Tenn. 2003) (quoting *In re Krohn,* 886 F.2d 123, 125 (6th Cir. 1989) (citing *Local
Loan Co. v. Hunt,* 54 S.Ct. 695, 699 (1934)).  The Debtor received a discharge on January 11, 2006.

. . . .

> (15)  not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—
>
>> (A)  the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
>>
>> (B)  discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor[.]

11 U.S.C.A. § 523(a).

Although § 523(a) actions are generally construed strictly in favor of debtors, in order to promote Congressional policies favoring the enforcement of spousal and child support obligations, proof in § 523(a)(5) actions is strictly construed in favor of former spouses and children.  *See Hanjora v. Hanjora (In re Hanjora)*, 276 B.R. 822, 825 (Bankr. N.D. Ohio 2001) (stating that § 523(a) "implements the general bankruptcy policy of favoring domestic support obligations over the Plaintiff's need for a fresh start").  Nevertheless, the former spouse bears the burden of proof, by a preponderance of the evidence.  *Grogan v. Garner*, 111 S. Ct. 654, 661 (1991).

Whether a debt falls within the scope of § 523(a)(5) as alimony, maintenance, or support is a matter of federal law, but because these issues fall "within the exclusive domain of the state courts[,]" the bankruptcy court should also rely on state law in making its determination.  *Long v.*

13

*Calhoun (In re Calhoun)*, 715 F.2d 1103, 1107-08 (6th Cir. 1983).  In the Sixth Circuit, whether an award of alimony, maintenance, or support is actually in the nature thereof depends upon the following:  (1) whether the award was intended to be support; (2) whether the award was effectively support in light of the recipient spouse's present needs; and (3) whether the award was "manifestly unreasonable under traditional concepts of support."  *Calhoun*, 715 F.2d at 1109-1110.

"In determining whether an award is actually support, the bankruptcy court should first consider whether it 'quacks' like support," and look for the presence of "traditional state law indicia that are consistent with a support obligation" giving rise to the conclusive presumption that the award is support.  *Sorah v. Sorah (In re Sorah)*, 163 F.3d 397, 401 (6th Cir. 1998).  These indicia include, but are not limited to, the following: "(1) a label such as alimony, support, or maintenance in the decree or agreement, (2) a direct payment to the former spouse, as opposed to the assumption of a third-party debt, and (3) payments that are contingent upon such events as death, remarriage, or eligibility for Social Security benefits."  *Sorah*, 163 F.3d at 401.  Other circumstances to be considered include

> (1) the nature of the obligations assumed; (2) the structure and language of the parties' agreement or the court's decree; (3) whether other lump sum or periodic payments were also provided; (4) the length of the marriage; (5) the age, health and work skills of the parties; (6) whether the obligation terminates upon the death or remarriage of the parties; (7) the adequacy of support absent the debt assumption; and (8) evidence of negotiations or other understandings as to the intended purposes of the assumption.

*Luman v. Luman (In re Luman)*, 238 B.R. 697, 706 (Bankr. N.D. Ohio 1999).

If a former spouse establishes the presence of "traditional state law indicia" and satisfies the burden of proof, it shifts to the debtor to prove the third prong of the *Calhoun* test; i.e., that

14

"although the obligation is of the *type* that may not be discharged in bankruptcy, its *amount* is unreasonable in light of the debtor spouse's financial circumstances." *Sorah*, 163 F.3d at 401. In making a reasonableness determination, the bankruptcy court must give deference to the state court's findings of fact, and if it finds an award is unreasonable, it may discharge the debt only "to the extent that it exceeds what the debtor spouse can reasonably be expected to pay." *Sorah*, 163 F.3d at 402. "Section 523 obviously places no limitation upon a state court's ability to award alimony, maintenance, or support, and the bankruptcy court should not second-guess the state court support award absent evidence that the burden on the debtor spouse is excessive." *Sorah*, 163 F.3d at 402 (citations omitted).

In this case, the award appears to be payable to a third party, i.e., Mrs. Rogers' attorney, and the Final Decree does not label the attorneys' fees as "support." Nevertheless, it does expressly state, in paragraph 12 concerning "debts" which is located directly between paragraph 11 awarding attorneys' fees and paragraph 13 taxing court costs, that "[w]ith respect to each party's responsibility for payment of certain debts and liabilities, and their obligation to hold the other harmless for the payment thereof, this is a non-dischargeable debt under the Bankruptcy Code, this obligation being part of the final financial support for both parties." Ex. 5. Likewise, the presence of other factors, such as the thirty-nine year duration of the marriage, weigh in favor of a finding that this award was intended by the trial court to be support.

Awards of attorneys' fees in domestic cases are generally deemed to be in the nature of support for purposes of § 523(a)(5) and are therefore nondischargeable. *Macy v. Macy*, 114 F.3d 1, 2-3 (1st Cir. 1997) (holding that attorney's fees incurred to enforce support-related orders are

15

nondischargeable); *see also Weems v. Cavaluzzi (In re Cavaluzzi)*, 364 B.R. 363, 365 (Bankr. E.D. Mo. 2007); *Moore v. Strickland (In re Strickland)*, 350 B.R. 158, 162 (Bankr. D. Del. 2006); *Beggs v. Niewdach (In re Beggs)*, 314 B.R. 401, 415 (Bankr. E.D. Ark. 2004); *Goans v. Goans (In re Goans)*, 271 B.R. 528, 534 (Bankr. E.D. Mich. 2001). However, in order to determine the intent of the state trial court, it is necessary to again refer to state law.

Alimony is awarded to aid a disadvantaged spouse in becoming self-sufficient and to mitigate the "harsh economic realities of divorce." *Anderton v. Anderton*, 988 S.W.2d 675, 683 (Tenn. Ct. App. 1999). When awarding alimony, the most important factor to be considered by the trial court is the need of the spouse receiving the award, followed next by the ability of the obligated spouse to pay the award. *Houghland v. Houghland*, 844 S.W.2d 619, 621 (Tenn. Ct. App. 1992). Courts also consider relevant factors such as relative earning capacity, relative education and training, the health of each party, the duration of the marriage, the parties' separate assets, the division of marital property, the standard of living established during the marriage, the relative fault of the parties to the divorce, and any other factors "as are necessary to consider the equities between the parties." *See* TENN. CODE ANN. § 36-5-101(d)(1)(E) (Supp. 2004); *Robertson v. Robertson*, 76 S.W.3d 337, 340-41 (Tenn. 2002). Furthermore,

> [t]he plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

16

TENN. CODE ANN. § 36-5-103(c) (Supp. 2004).  Therefore, "[a]n award of attorney's fees in divorce

cases is treated as a form of spousal support, and the award is characterized as alimony *in solido*."

*Wilder v. Wilder*, 66 S.W.3d 892, 894 (Tenn. Ct. App. 2001); *see also Keyt v. Keyt*, 244 S.W.3d 321,

333-34 (Tenn. 2007).

"Payments in the nature of support need not be made directly to the spouse or dependent to

be nondischargeable."  *Calhoun*, 715 F.2d at 1107; *Crawford v. Osborne (In re Osborne)*, 262 B.R.

435, 440 (Bankr. E.D. Tenn. 2001).  In fact, many courts have held that even though awards of

attorneys' fees were made directly to the actual attorneys, the awards were nonetheless

nondischargeable pursuant to § 523(a)(5).  *See, e.g., Holliday v. Kline (In re Kline)*, 65 F.3d 749,

750-51 (8th Cir. 1995); *Zaino v. Zaino*, 316 B.R. 1, 8 (Bankr. D.R.I. 2004); *Turner v. Whitney (In re

Whitney)*, 265 B.R. 1, 2 n.2 (Bankr. D. Me. 2001); *Goans*, 271 B.R. at 531, 534; *Baker v. Baker (In

re Baker)*, 274 B.R. 176, 187 (Bankr. D.S.C. 2000).  Likewise, in Tennessee, it is common practice

for the state courts to award attorneys' fees directly to the attorneys in domestic matters, seeing as

"the justification and principle are the same; i.e., that money ordered to be paid by the husband to

the wife's attorney is additional alimony allowed to the wife."  *Palmer v. Palmer*, 562 S.W.2d 833,

839 (Tenn. Ct. App. 1977) ("In practice such 'additional alimony' is frequently designated simply

as fee to be paid to the wife's counsel.").

Clearly, the Final Decree does not expressly label the attorneys' fees assessed against the

Debtor as "alimony" or "support;" however, this type of award is generally intended and treated as

a form of support under Tennessee Code Annotated as well as by Tennessee and bankruptcy courts.

And, having found the presence of factors to indicate that the court intended to award attorneys' fees

17

in Mrs. Rogers' favor as a method of support, the court determines that Mrs. Rogers' attorneys' fees attributable to the Divorce Action are in the nature of alimony, maintenance, or support, and, as such, are nondischargeable under § 523(a)(5).

Mrs. Rogers also contends that the obligation imposed upon the Debtor under the Final Decree to pay court costs is nondischargeable under § 523(a)(5). The court disagrees. Unlike attorneys' fees, the court finds no statutory or common law basis to infer the intent of the trial court that the court costs were additional support. Moreover, because this obligation is unilateral, i.e., it is the sole responsibility of the Debtor with no corresponding obligation on Mrs. Rogers' part should he fail to pay the court costs, there is simply no indicia of support associated with this obligation, and it does not fall within the scope of § 523(a)(5) and was discharged on January 11, 2006.

**IV**

The final issue before the court is whether the award of one-half of the Debtor's military retirement is dischargeable as a property division. To successfully obtain a determination of dischargeability under § 523(a)(15)(A) or (B), a debtor has the burden of proving by a preponderance of the evidence "one of the affirmative defenses set forth in § 523(a)(15)(A) or (B)." *Osborne*, 262 B.R. at 439; *Hart v. Molino (In re Molino)*, 225 B.R. 904, 907 (B.A.P. 6th Cir. 1998). Absent proof of one of these defenses, all debts incurred in the course of or in connection with a domestic matter are nondischargeable under § 523(a)(15), irrespective of whether they are payable to the former spouse, child, or a third party. *Gibson v. Gibson (In re Gibson)*, 219 B.R. 195, 201, 205 (B.A.P. 6th Cir. 1998).

18

Section 523(a)(15)(A) requires the court to ascertain whether a debtor has any disposable income, after paying all monthly expenses reasonably necessary to support himself and his dependents, that can be used to pay the debts.  *See* § 523(a)(15)(A); *Calabrese v. Calabrese (In re Calabrese)*, 277 B.R. 357, 361 (Bankr. N.D. Ohio 2002).  An inability to pay requires a showing by the Debtor that he is presently unable to pay and will be unable to pay in the future.  *Molino*, 225 B.R. at 908.  On the other hand, if the Debtor "has sufficient disposable income to pay all or a material part of a debt within a reasonable amount of time," he has the ability to pay as contemplated by § 523(a)(15).  *Osborne*, 262 B.R. at 444 (quoting *Armstrong v. Armstrong (In re Armstrong)*, 205 B.R. 386, 392 (Bankr. W.D. Tenn. 1996)).

Section 523(a)(15)(B) also allows discharge of a debt upon a showing that the benefit of discharge to the debtor outweighs any detriment to the former spouse if the debt is not discharged.  The bankruptcy court should compare the financial condition and standard of living of each party to "determine the true benefit of the debtor's possible discharge against any hardship the former spouse . . . would suffer as a result of a discharge."  *Osborne*, 262 B.R. at 444 (quoting *Patterson v. Patterson (In re Patterson)*, 132 F.3d 33, 1997 WL 745501, at *3 (6th Cir. Nov. 24, 1997)).

The court has already found that the October 31, 2005 Final Decree is not void, and there is no dispute that the questioned debt arose in the course of a divorce.  Furthermore, in the September 12, 2007 Opinion, the Court of Appeals made a specific determination that the one-half military retirement awarded under the Final Decree was not in the nature of alimony, maintenance, or support as designated by the trial court, but was, in fact, a division of marital property.  Ex. 20 at

5, 6.  Accordingly, whether or not this award is dischargeable falls within the scope of § 523(a)(15) as a debt incurred in the course of a separation or divorce action that are not of the kind described in § 523(a)(5), and the Debtor bears the burden of proving an inability to pay the debt or that a discharge will result in a greater benefit to him that outweighs any detriment to Mrs. Rogers.

According to Schedule I filed with the Debtor's petition on October 6, 2005, the Debtor's net monthly income was $2,470.00, consisting of $919.00 from social security benefits, $917.00 from VA disability benefits, and $634.00 from his military retirement. COLL. EX. 7.  Schedule J, also filed with his petition on October 6, 2005, evidences total monthly expenses at $2,845.50, which consist of the following:  (1) $720.00 for rent or mortgage; (2) $105.00 for utilities; (3) $70.00 for telephone service; (4)  $60.00 for cable; (5)  $200.00 for food; (6)  $25.00 for clothing; (7)  $150.00 for medical and dental expenses; (8) $150.00 for transportation costs; (9) $117.00 for health insurance; (10) $65.00 for automobile insurance; and (11) $1,183.50 payable to Mrs. Rogers for alimony, maintenance, and support. COLL. EX. 7.  These figures establish a monthly deficit at the time he filed his bankruptcy petition of $375.50.[6]

Mrs. Rogers provided a monthly statement of income and expenses concerning her 2005 financial information evidencing monthly income of $1,249.00, consisting of $274.00 in salary and $1,184.00 from the alimony she received from the Debtor, less taxes withheld of $209.00.  EX. 10. Her monthly expenses for 2005 were broken down as follows:  (1) $325.00 for rent; (2) $60.00 for utilities; (3) $70.00 for telephone service; (4) $45.00 for cable; (5) $150.00 for groceries/household

---

[6] Neither the Debtor nor Mrs. Rogers stipulated current income and expense information.  The court is, therefore, required to rely upon the parties' stipulated financial information, all of which relates back to 2005.

supplies; (6) $22.00 for hair cuts/salon; (7) $50.00 for medical/dental expenses; (8) $30.00 for

co-pays for prescription drugs; (9) $60.00 for gifts; (10) $2.00 for magazines; (11) $50.00 for

clothing; (12) $40.00 for automobile insurance; (13) $9.00 for life insurance; (14) $52.00 for medical

insurance; (15) $25.00 for car upkeep/maintenance; (16) $65.00 for gas and oil; (17) $8.00 for

automobile tags/licenses; (18) $20.00 for recreation/entertainment; and (19) $500.00 for credit

cards.[7]  Ex. 10.

Also relevant are the following facts and findings made by the Tennessee Court of Appeals

in its September 12, 2007 Opinion:

> In this case, contrary to the husband's assertions, the Trial Court expressly found that
> rehabilitation of wife was not feasible, and that long term support was necessary.
> The evidence does not preponderate against this finding.  Tenn. Code Ann.
> § 36-5-121.

> The wife's earning capacity was significantly less than the husband's, as he had a
> bachelor's degree plus completion of some master's courses, and the wife holds only
> a GED.  The husband has considerably more work experience, while wife's work
> experience when she was in better health, was limited to low-paying retail jobs, and
> those only during the wife's older years.  The husband did not have a job at the time
> of trial, but stated that he was capable of working and was looking for work.  He has
> a steady income from his military retirement, social security benefits, and VA
> disability benefits.

> As the Court found, the parties were married for nearly forty years, and the husband
> had been employed throughout the marriage, while the wife had been essentially a
> homemaker.  Both parties had some health issues, but the husband's did not
> apparently affect his ability to work.

> Based upon the statutory factors the evidence establishes that the Trial Court properly
> awarded permanent alimony, as the wife's income is insignificant, compared to the
> husband's income of $2,400.00 per month, which will increase upon his again
> becoming employed.  The wife's situation is far less promising.  If she abandons her

---

[7] Per the Monthly Statement, Mrs. Rogers owed an aggregate balance on her cards of approximately $6,000.00.
Ex. 10.

business and gets a full-time job in the retail field the evidence indicates that her income would be approximately 1/3 of what the husband receives from his retirement and disability alone. Moreover, she would also lose other benefits she currently derives from her business in way of a place to live and utilities.

Ex. 20 at 4-5. Neither party introduced into evidence any current financial information.

Based upon the record, and comparing the Debtor's income and expenses with that of Mrs. Rogers, while the court finds that the Debtor does not have a significant disposable income, the benefit of discharging his obligation to pay one-half of his military retirement to Mrs. Rogers does not outweigh the detriment that doing so would cause to her. Pursuant to the September 12, 2007 Opinion, the Debtor's alimony obligations to Mrs. Rogers decreased from $1,183.50 to $865.50 per month, resulting in an additional $318.00 that he is no longer expending, which brings his monthly expenses to $2,527.50, resulting in a monthly deficit of $57.50. However, on the other side, Mrs. Rogers' income decreases by $318.00 to $931.00 per month, bringing her monthly deficit to $654.00. Although both parties are struggling financially, it is clear from the record that Mrs. Rogers' financial situation is worse than that of the Debtor and allowing the Debtor to discharge his obligation to pay her one-half of his military retirement would only exacerbate her problems.

The Debtor has not met his burden of proof that discharge would result in a greater benefit to him than would cause a greater detriment to Mrs. Rogers. Therefore, the award to Mrs. Rogers of one-half of the Debtor's military retirement in the Final Decree is likewise nondischargeable.

A judgment consistent with this Memorandum will be entered.


FILED:  April 11, 2008

BY THE COURT

*/s/  RICHARD STAIR, JR.*

RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE